Post v. The Sum of Ten Thousand Dollars

*C. David Krewson*, for plaintiff.

*Lee B. Lansberry*, for defendant.

SATTERTHWAITE, P. J., August 13, 1968.—The parties to this action seek a judicial determination of the separate and independent rights of estranged and divorced mother and father, respectively, to the proceeds of Servicemen's Group Life Insurance payable by reason of the death of their son while on active duty in the United States Navy. The mother claims the entire fund of $10,000 on the basis that she had been designated sole beneficiary by her son, albeit inferentially and informally, and also on the alternative ground that the father, by his alleged abandonment and desertion of the son for many years prior to the latter's military service, was not a "parent" within the meaning of the congressional enumeration of beneficiaries who would take in default of designation by the insured serviceman. The matter is before the court on the father's preliminary objections to the mother's pleading of her claim to the whole fund.

It must be noted at the outset that the procedural course of this litigation has been rather informal, and its present posture is somewhat ambiguous and uncertain. The action was commenced as one in equity by the mother's complaint against Prudential Life Insurance Company of America as sole defendant. The latter was the insurer of the group policy pursuant to which the life of the serviceman in question was insured. The mother sought by instituting this action to enjoin the insurance company from making any payment under the policy to the father and to require that all proceeds be paid to her. No one has questioned her proceeding in this fashion. A preliminary injunction was issued, but the same lapsed for failure to hold a hearing for the continuance thereof. Instead, pursuant to written stipulation of counsel of record for, respectively, the mother, the insurance company and

the father, the court entered an order adding the father "to the record as a party plaintiff claiming proceeds" of the policy in suit. (The stipulation, in amplification, contemplated that the father be joined of record "as if he had been made a party by interpleader at the instance of the Prudential Life Insurance Company of America".)

Pursuant to a further stipulation by counsel for all three parties, the court later entered another order authorizing the insurance company defendant to pay the $10,000 proceeds into court and thereupon to be discharged from all liability to either the mother or the father by reason of their son's death. The fund was, in fact, so paid to the prothonotary, and the insurance company is now entirely out of the case. Still later, another stipulation was filed, agreeing that the caption of the case thereafter be styled "Elva S. Post (mother) and Clifton F. Post (father), plaintiffs, v. The Sum of Ten Thousand Dollars", pursuant to Pennsylvania Rule of Civil Procedure 2301.

The purpose of these stipulations was apparently to bypass and obviate the more orderly documentation contemplated by Pa. R. C. P. 2302 to 2307, inclusive, relating to interpleader by defendants. Notwithstanding the informality of the record pleadings, we may regard the father's present preliminary objections to the mother's original complaint against the insurance company either as his statement of "Additional Matter" against the mother's claim to the fund, as provided by Pa. R. C. P. 2309 (c), or as his manner of questioning the form and sufficiency of the mother's pleading, as contemplated by Pa. R. C. P. 2312. The uncertainty implicit in the situation arises out of the failure of the stipulations and orders thereunder, as heretofore filed, to indicate the further course of these proceedings or the manner of ultimate final determination thereof. It is apparent that the parties have

had an understanding to disregard and bypass matters of form and procedure prescribed by the interpleader rules. They, and anyone else concerned, are hereby given notice that the court's acquiscence in such informality of procedure should not be construed as an endorsement thereof, nor should the court be understood to have indicated in any way the manner in which the action will proceed, if the parties cannot agree thereon, after compliance with the order hereinafter entered in disposing of the instant preliminary objections. The parties are entirely "on their own" in these respects, at least on the present state of the record.

The mother's complaint against the insurance company alleged the apparently undisputed facts of her status as mother of the insured serviceman, the latter's entry into active service in the United States Navy in February 1966 and his death in such service on July 29, 1967, while on board the U. S. S. Forrestal; and that the defendant insurance company was the insurer of his life under a specified Servicemen's Group Life Insurance policy in the sum of $10,000 for which she had duly filed her claim with the appropriate agency. In denial of the claim to a share of such funds by her former husband as father of the insured, she alleged additional matters, the form, pertinency and sufficiency of which occasion the instant preliminary objections.

Although she had volunteered in paragraph 7 of the complaint that the insured had "filed" no beneficiary designation form "with defendant", she apparently intended to allege circumstances which might permit her to assert an equitable designation of herself as such. Thus, in paragraph 8, she averred that her son had "designated [her] the beneficiary of his unpaid pay and allowances were he to die while in the active military service of the United States". In paragraph

9, she further asserted that her son "orally advised [her] before embarking on the U. S. S. Forrestal that he wished her to be the beneficiary of the proceeds of the aforesaid insurance policy should he die".

As an alternative ground for excluding the father, the mother's complaint still further pleaded in paragraphs 13, 14, 15 and 16 the father's alleged desertion of herself and their son since 1952, their divorce in 1954, his abandonment and nonperformance of any parental duties toward the son, his noncompliance with a support order for the son and the accumulation of $1,229 in arrearages thereon as of January 1964.

The father's preliminary objections are three-fold in nature: Motions to strike off all of the paragraphs so specifically summarized above as "impertinent"; a motion for a more specific statement of paragraph 8 as to the manner of designation of the mother as beneficiary of the insured's unpaid pay and allowances; and a demurrer.

Determination of the questions so raised depends upon the construction of certain phases of the 1965 Act of Congress setting up and regulating the Servicemen's Group Life Insurance program. For the legislative history, certain of the committee reports and statements of purposes of this enactment, see U. S. C. Congressional and Administrative News, 89th Congress, first sess., 1965, vol. 2, p. 3232, et seq. No need is occasioned to make any elaborate or detailed summary of such objectives and insuring provisions, other than to note that Congress thereby established a program by which those on active duty in the armed services might obtain life insurance coverage, and the government might provide for the same at a minimum expense to the public, through a group policy or policies issued by an approved commercial company or companies, with every serviceman on active duty after the effective date thereof automatically insured, as a

member of the group, in the amount of $10,000 unless he specifically elected not to be insured or wished to be insured for only $5,000. The cost of such insurance is paid to the insuring company by funds arising from payroll deductions from insured members in amounts established as a level average to cover the ordinary cost for conventional group life insurance, plus additional amounts appropriated by the government for the extra hazard of active duty in the armed forces.

In form, this Act of Congress was enacted as Public Law 89-214, September 29, 1965, 79 Stat. 880, and comprises subchapter III, Servicemen's Group Life Insurance; of Chapter 19, Insurance; of Title 38, Veterans Benefits, of the United States Code, 38 U.S.C.A. §765, et seq. While this legislation has been inserted into the United States Code as part of the same title 38, chapter 19, as the National Service Life Insurance Act of 1940, which comprises subchapter I, 38 U.S.C.A. §701, et seq., it is apparent that the latter, no longer available as new insurance, and the former are entirely separate and independent except for certain administrative details. In no sense is the Servicemen's Group Life Insurance Act of 1965 a mere supplement or amplification of the National Service Life Insurance Act of 1940.

38 U.S.C.A. §770 contains the applicable and presently controlling congressional provisions of the 1965 Act as to the insured's beneficiaries under this new program. It provides that such insurance benefits be paid on the insured member's death in a specified order of precedence: (1) To the beneficiary or beneficiaries designated in writing by the insured member; (2) if none so designated, then to the widow or widower; (3) if none, then to children or their descendants; (4) if none, then "to the parents of such member or former member or the survivor of them", without other or further definition or qualification;

(5) if none, then to the personal representative of the insured member; and finally (6) if none, to the next of kin under the law of the domicile of the insured member.

38 U.S.C.A. §765 contains the only specific definitions set forth in the 1965 Act; this section defines only the terms "active duty", "member", and "uniformed services"; the latter, of course, including the Navy.

The father-claimant contends herein that, since there was no written designation of beneficiary for the insurance in suit, and since there is no prior relative specified by the statute to take in default of designation, the instant fund must inevitably be paid to the "parents" of the deceased insured, and as a parent he is entitled to one-half under any circumstances. Accordingly, he argues, the averments of oral designation of beneficiary and designation of beneficiary for death benefits other than this insurance, as well as those relating to his alleged abandonment and nonsupport, are totally irrelevant and should be stricken as impertinent. Moreover, he further contends, the mother's complaint does not state a cause of action. Whether the latter contention is conditioned upon an implicit concession that she is entitled to half the fund is not clear; in terms, the demurrer asks that the mother's complaint be dismissed.

The mother, in opposition, contends that even though specific written designation of herself as beneficiary of the subject insurance was not filed by her son with the insurance carrier, nevertheless, analogous precedents have permitted some departure from exact and literal compliance by armed services personnel with such requirements, and similar latitude should be allowed here. Alternatively, she argues that the father's long extended dissociation and abandonment of any paternal relationship to the son effective-

ly removed and terminated his status as a "parent" so that he would not be entitled to share the fund in that capacity.

We have reluctantly come to the conclusion that the mother's latter argument cannot be sustained. It is founded on the premise that the statutory definition of "parent" and the precedents qualifying the purely biological criterion for such status, as established under the National Service Life Insurance Act of 1940, as amended, are applicable and controlling here, either because the instant 1965 Act should be construed as part of the 1940 NSLI legislation, or because, in any event, the judicial development of the concept of "parent" under the earlier insurance program should provide an analogy for construction of the same term under the later enactment. Unfortunately for mother-claimant, this premise is unfounded.

As already indicated, the Servicemen's Group Life Insurance Act of 1965 is entirely separate and independent of the National Service Life Insurance Act of 1940, not only as a matter of legislative format and enactment but also as to means and objectives. The former, in effect, provides for insurance for servicemen by subsidizing the cost of the extra hazardous perils to be covered and so to induce private commercial indemnity contracts; insurance is automatic and the insured's selection of beneficiaries is not limited by specified family relationships so that he may include or exclude whomever he desires in this connection. The latter, by way of contrast, had placed the government itself in the life insurance business; protection was furnished only upon request therefor by the serviceman, and the insured's only choice as to beneficiaries (as to insurance which matured before August 1, 1946) was to designate priorities among specifically enumerated family relatives.

The beneficiary provisions of the NSLI statute, in form as amended in 1942 (now contained in 38 U.S.C.A. §716), provided that such insurance should be payable only to a widow, widower, child, parent, brother or sister of the insured (in that order of priority if not otherwise designated by the insured), qualifying the words "parent or parents" with the clause "who last bore that relationship" to the insured. It also specifically defined the word "parent", in what is now 38 U.S.C.A. §701, as including not only a natural or adoptive father or mother, but also "persons who have stood in loco parentis to a member of the military or naval forces at any time before entry into active service for a period of not less than one year".

It is perfectly true, as the mother-claimant herein points out, that under these legislative definitions a foster parent who factually-legally did stand in loco parentis to the serviceman, even though not related to him by blood, would take the insurance fund by devolution under the NSLI statute, and the natural father would be entirely excluded if he had deserted, abandoned or otherwise removed himself in a realistic sense from the parental relationship and responsibility: Baumet v. United States, 344 U. S. 82 (1952). But it is equally true that such result was reached expressly and specifically by reason of the particular statutory language above quoted, defining and enlarging the concept of "parent". See Baumet, supra, 344 U. S. at page 85. Compare the more extended rationale in the companion case of United States v. Henning, 344 U. S. 66, 76-7 (1952):

" . . . The National Service Life Insurance Act as enacted in 1940 confined the class of devolutionary takers to the spouse and blood relatives of the insured. So written, the legislation proved unsatisfactory in practice. As construed, *that provision required pay-*

*ment of proceeds to an insured's natural parents though they had abandoned him* to be raised and supported wholly by foster parents, the latter being excluded by the Act. Upon recommendation of the Veterans' Administrator, Congress in 1942 amended the Act to foreclose that result. Persons who stood in loco parentis to the insured for at least one year prior to his entry into active military service were included within the Act's definition of 'parent'. And they qualified as takers by devolution if they 'last bore that relationship' to the insured . . .

" . . . when the natural parent has ceased to be such in truth and fact . . . , the clear intent of the 1942 amendments would demand the exclusion of the natural parent from participation in the proceeds". (Footnote references omitted; italics supplied.)

Applying this reasoning of the Servicemen's Group Life Insurance Act of 1965, we note that the words "parent or parents" as successive statutory devolutionary beneficiaries stand totally unqualified and without elaboration in this act, just as in the original 1940 version of the NSLI statute. It must follow, as was the inexorable result in NSLI cases prior to the 1942 amendments, that *any* "parent" qualifies and is not excluded by abandonment or nonsupport. Accordingly, father-claimant's preliminary objections in the instant case numbered 3, 4, 5, and 6 must be sustained, and paragraphs 13, 14, 15, and 16 of the mother-claimant's complaint must be stricken as irrelevant and impertinent.

On the beneficiary-designation question, we believe that the present record is equivocal, and a definitive determination of the mother-claimant's situation in this connection cannot now be made.

The sole statutory provision relating to designation of beneficiaries in the 1965 Act is contained in 38 U.S.C.A. §770, already hereinabove mentioned. In

defining the first priority class of beneficiary, this section provides:

"First, to the beneficiary or beneficiaries as the member or former member may have designated *by a writing received in the uniformed services* prior to such death." (Italics supplied.)

There is absolutely nothing in the complaint as presently stated that would indicate that mother-claimant's case either complies or does not comply with this statutory provision. While she conceded in paragraph 7 that her son filed no "form" of designation "with defendant" insurance company, she has made no unequivocal averment whatsoever as to whether he had or had not made a designation "by a writing received in the uniformed services", e.g., by possibly informal but written documentation handed to responsible authority in United States Navy channels. To this extent, of course, she has failed to state a cause of action as to the whole fund, and to this extent the father-claimant's demurrer would seem to be well taken. But she should be given leave to amend, if she desires to do so, and if she believes that she might thereby be able to present a case justifying the determination that she was equitably, even if informally, designated sole beneficiary.

Father-claimant's motions to strike paragraphs 8 and 9 of the complaint as impertinent must be denied. While an oral designation of beneficiary in itself may be insufficient to meet the statutory requirement of a writing, and while the designation of a beneficiary for other death benefits does not necessarily extend also to the subject insurance proceeds, nevertheless, both of these factors may be relevant to the question of the insured's intentions in this connection. The whole picture, demonstrating (1) the serviceman's intention to designate a beneficiary, and (2) the overt act or acts done by him, analyzed against the statutory re-

quirements therefor, in implementation of such intent considered in light of what might reasonably have been expected of him under the circumstances of his military service, must be presented before the court may make a rational determination of the question. Obviously, this possibly could include, inter alia, the exact and precise manner in which the son had designated his mother as beneficiary of his unpaid pay and allowances on his death. Accordingly, the father's preliminary objection numbered 7, requesting a more specific statement on this subject, should be sustained. If mother-claimant requires more time to obtain this document from government records, as she indicates in the argument brief, she may apply for an extension of time for compliance with the order hereinafter entered giving her leave to amend within 20 days.

For possibly analogous precedents on the subject of the sufficiency or insufficiency of informal designations of beneficiary under the somewhat similar requirements of the Veterans Administration regulations for National Service Life Insurance death proceeds, see Annotation, 2 A. L. R. 2d 489 (1948); Benard v. United States, 368 F. 2d 897, 901 (C. A. 8, 1966); Bew v. United States, 286 F. 2d 570 (C. A. 4, 1961); Lovato v. United States, 295 F. 2d 78 (C. A. 10, 1961); Ward v. United States, 371 F. 2d 108 (C. A. 7, 1966); Collins v. Collins, 378 F. 2d 1020 (C. A. 4, 1967); Baker v. United States, 386 F. 2d 356 (C. A. 5, 1967). Compare, under the substantially similar statutory requirements of the Federal Employees' Group Life Insurance Act of 1954, the State court decision involving the same general problem in Breckline v. Metropolitan Life Insurance Co., 406 Pa. 573 (1962).

ORDER

And now, August 13, 1968, for the reasons stated in the foregoing opinion, the preliminary objections of claimant, Clifton F. Post, to the original complaint of

Elva S. Post numbered 3, 4, 5, 6 and 7 are hereby sustained; those numbered 1 and 2 are hereby overruled; and no decision is made as to that numbered 8, since said complaint does state a cause of action as to part, but not as to all, of the funds in suit.

Leave is hereby given to Elva S. Post to file an amended complaint within 20 days from this date.